UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| PHILLIP LESLIE MAXON #19708, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:22-cv-00368 |
| | ) | Judge Trauger |
| OFFICER DELEON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Plaintiff Phillip Maxon filed a pro se amended civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 8) and an application to proceed as a pauper.[1] The amended complaint is before the court for initial review. As explained below, it appears that the plaintiff fails to state a claim against the named defendants at this time. Therefore, to proceed in this case, the plaintiff must file an amended complaint by following the instructions in the order filed with this memorandum.

**I.  Application to Proceed as a Pauper**

An inmate may bring a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). The plaintiff's application to proceed as a pauper reflects that he cannot pay the full filing fee in advance. (Case No. 3:22-cv-367, Doc. No. 5 at 3.) Accordingly, the plaintiff will be granted pauper status, and the filing fee will be assessed in the accompanying order. 28 U.S.C. § 1915(b).

**II.  Initial Review**

The court must determine if the amended complaint is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C.

---

[1] The plaintiff filed several complaints together, and the court let him file a single application to proceed as a pauper for all of these cases by writing multiple case numbers on it. (Doc. No. 6 at 5.) The plaintiff did so, and the application in Case No. 3:22-cv-367 at Doc. No. 5 serves as the application for this case.

§§ 1915(e)(2)(B), 1915A. And because the plaintiff is representing himself, the court must hold the complaint to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### A. Allegations

This case primarily concerns an alleged shooting of the plaintiff by police on June 6, 2021, filmed at a distance by a TV news crew. (Doc. No. 8 at 6.) Liberally construing the amended complaint, the plaintiff alleges as follows:

In the weeks before the shooting, the plaintiff was sleeping in his car each night. (Doc. No. 8 at 13.) He had a pistol for protection, including to protect himself from an enemy with a pistol who "stalked" the plaintiff 3 times. (*Id.*) Over a two-week period, police woke the plaintiff at night 6 times to accuse him of wanting to shoot someone or not paying taxes. (*Id.*; Doc. No. 8-2 at 2.) The plaintiff maintains that his enemy befriended the police and put them up to this. (Doc. No. 8-2 at 2.) Two days before the shooting, the plaintiff tried to speak to Officer Baer about these incidents at a truck stop, but Baer spoke "very fast," as if he was "on a very high caffeine kick" or "high on something." (Doc. No. 8 at 13; Doc. No. 8-2 at 1.)

As the plaintiff was driving around 5:00 p.m. on June 6, 2021, he saw 6 police cars parked to his right. (Doc. No. 8 at 13.) He pulled over to speak to an officer. (*Id.*) Officer Baer came to the plaintiff's car, and the plaintiff asked if Baer would "like a confrontation" and said they should "go where [the plaintiff] park[ed] at night." (*Id.*) The plaintiff had in mind a "verbal" confrontation rather than a "bodily assault" or "gunplay." (*Id.*) Baer's "eyes lit up," he "shook his head yes," and then he returned to his patrol car. (*Id.*) The plaintiff drove toward the place he was parking at night at that time. (*Id.*) Baer and 5 other patrol cars followed the plaintiff. (*Id.*; Doc. No. 8-2 at 2.) The police did not activate their blue lights, turn on their sirens, or use a bullhorn. (Doc. No. 8 at 13.)

2

The plaintiff assumed he was being followed so the police could make false accusations against him or chew him out again. (*Id.*; Doc. No. 8-2 at 2–3.)

The plaintiff pulled into the field where he parked at night, near West Rutherford Boulevard. (Doc. No . 8 at 13.) Officer Baer followed and parked perpendicular to the plaintiff. (*Id.*; Doc. No. 8-2 at 2.) With a pistol in his hand and a "wild look" in his eyes, Baer yelled, "Come out with your hands up or I'm going to shoot." (Doc. No. 8 at 13; Doc. No. 8-2 at 3.) The plaintiff said, "no," because he did not intend to surrender to someone that he "knew was on drugs." (Doc. No. 8-2 at 3.) Officer Deleon parked next to Baer. (Doc. No. 8 at 14.) Deleon exited the car, pointed a shotgun toward the plaintiff, and yelled, "Come out of the [car] with your hands up or I'm going to fire!" (Doc. No. 8-2 at 3.) The plaintiff said, "go ahead," because he knew there was too much pressure on police departments at the time for the officers to shoot him. (Doc. No. 8 at 14.) The plaintiff did not point his pistol at anyone during this time, but while he was talking to the officers, he placed the pistol on the dashboard, opened the door and moved it to the front fender, and then moved it back to the dashboard. (*Id.*) During this time, the plaintiff told Deleon 3 times that he did not intend to hurt anyone. (Doc. No. 8-2 at 4.) The plaintiff then told the officers he would surrender, and the officers agreed not to handcuff him too tightly. (Doc. No. 8 at 14.) The plaintiff also said he wanted to fire 3 shots into the ground, and Deleon said, "go ahead." (*Id.*)

The plaintiff exited the car, and out of the corner of his eye, he saw Officer Deleon prepare to fire the shotgun. (Doc. No. 8-2 at 3–4.) The plaintiff looked at Deleon and said, "Don't shoot my [car]." (*Id.* at 4.) Deleon responded, "I won't." (*Id.*) The plaintiff also told Deleon that he would go to the ground. (*Id.*) The plaintiff then yelled "fuck you Satan," fired 3 shots into the ground, and tossed the pistol 6-8 feet away. (Doc. No. 8 at 14.) Four seconds later, Deleon shot the plaintiff with the shotgun, nearly shattering his forearm and elbow. (Doc. No. 8 at 6; Doc. No. 8-2 at 4.)

3

The plaintiff said, "Ugh! You shot me!" (Doc. No. 8-2 at 4.) As the plaintiff was going to the ground, Deleon shot the plaintiff in his side. (*Id.*) The plaintiff was rolled over and placed in handcuffs that were too tight. (*Id.*)

The plaintiff passed out, but briefly regained consciousness to hear someone going through his wallet say, "Hey! He's an apostle!" (Doc. No. 8 at 14; Doc. No. 8-2 at 4.) Officer Jones then walked over and shot the plaintiff in the abdomen with a pistol. (Doc. No. 8 at 6, 14.) The plaintiff then heard officers formulating a false report against him. He heard Officer Baer say, "Hey I wrote he made an illegal u-turn." (*Id.* at 14.) The plaintiff heard and partially saw Officer Deleon say, "Good! That'll make his insurance go up." (*Id.*) When the ambulance arrived, the officers helped put the plaintiff inside and did not read him his rights. (*Id.*) The plaintiff sustained internal injuries and now wears a colostomy bag. (*Id.* at 6.)

**B.     Legal Standard**

To decide if the complaint states a claim, the court applies the same standard as under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

**C.     Analysis**

The plaintiff brings this case under Section 1983. (Doc. No. 8 at 4.) Section 1983 allows individuals to bring civil claims based on violations of "the Constitution or federal laws by those

4

acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). The amended complaint names three defendants: Stonecrest Hospital, the Murfreesboro Police Department, and the Rutherford County Sheriff's Office. (Doc. No. 8 at 2, 4.) However, none of these parties is a proper defendant in a Section 1983 case. And although the municipal entities of Murfreesboro and Rutherford County may be sued under Section 1983, the plaintiff does not provide sufficient facts to state a claim against them at this time.

### 1. Stonecrest Hospital

As an initial matter, "[a] hospital is not a 'person' within the meaning of [Section] 1983." *Bumpas v. Matthew Nixon*, No. 3:08-0977, 2009 WL 3048562, at *4 (M.D. Tenn. Sept. 17, 2009). Even more fundamentally, however, the plaintiff does not make any allegations in *this case* (Case No. 3:22-cv-368) concerning Stonecrest Hospital. This case concerns the plaintiff's alleged shooting by police on June 6, 2021. Case No. 3:22-cv-367, on the other hand, concerns the plaintiff's alleged treatment at Stonecrest Hospital. So, if the plaintiff can pursue a claim arising from his alleged treatment at Stonecrest Hospital, it must be in Case No. 3:22-cv-367 instead of this case.

### 2. Murfreesboro Police Department and Rutherford County Sheriff's Office

Like hospitals, "police departments and sheriff's departments are not proper parties" under Section 1983. *Mathes v. Metro. Gov't of Nashville and Davidson Cnty.*, No. 3:10-cv-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) (collecting cases). The municipalities represented by the Murfreesboro Police Department and the Rutherford County Sheriff's Office—the City of Murfreesboro and Rutherford County, respectively—may be sued under Section 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). But to state a claim against municipal entities like Murfreesboro and Rutherford County, the plaintiff must allege that he (1) "suffered a constitutional

5

Case 3:22-cv-00368   Document 10   Filed 09/20/22   Page 5 of 7 PageID #: 68

violation and (2) that a municipal policy or custom directly caused the violation." *Hardrick v. City of Detroit, Michigan*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell*, 436 U.S. at 690–92). There are four ways to demonstrate a municipality's policy or custom: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Wiley v. City of Columbus, Ohio*, 36 F.4th 661, 670 (6th Cir. 2022) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

Here, the plaintiff does not make allegations that allow the court to reasonably infer that the City of Murfreesboro or Rutherford County had a "policy or custom" that directly caused the asserted constitutional violations of the individual police officers named in the amended complaint. An allegation that the plaintiff suffered a constitutional violation by an employee of the City or County, without more, is insufficient to impose liability on Murfreesboro or Rutherford County. *See D'Ambrosio v. Marino*, 747 F.3d 378, 388–89 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 691) ("A municipality may not be held liable under § 1983 on a respondeat superior theory—in other words, 'solely because it employs a tortfeasor.'").

Rather than dismiss the case at this time, however, the court will allow the plaintiff an opportunity to file an amended complaint. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA."). The plaintiff should consult the order filed with this memorandum for more specific instructions, but in short, if the plaintiff wants to bring this case against any of the individual police officers named in his allegations, he must clearly list them as defendants on the complaint form.

## III. Conclusion

For these reasons, the plaintiff will be granted pauper status and the court will give him an opportunity to file an amended complaint. If the plaintiff does not file an amended complaint within 30 days of the date this memorandum and order is entered on the docket, the court will dismiss this case for failure to state a claim.

An appropriate order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge